IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT CARR, JR.,

                Plaintiff,

v.

LAURA SUKOWATY,

                Defendant.

OPINION and ORDER

23-cv-285-jdp

---

Plaintiff Robert Carr, Jr., proceeding without counsel, alleges that for a four-month period defendant Dr. Laura Sukowaty ignored his complaints that his hemorrhoids were causing him pain and other problems. Dkt. 4. I allowed Carr to proceed on an Eighth Amendment medical care claim against Sukowaty based on this allegation. Dkt. 13.

Sukowaty moves for summary judgment, and Carr has filed a cross-motion for summary judgment. Dkt. 39 and Dkt. 43. There's no evidence that Sukowaty ignored any of Carr's complaints about hemorrhoids. Sukowaty treated Carr's hemorrhoids and, although she didn't provide Carr with his treatment of choice (an increase in witch hazel pads), the undisputed evidence shows that she based her decision on her medical judgment. I will grant Sukowaty's motion and deny Carr's.

UNDISPUTED FACTS

The following facts are undisputed except where noted. The events at issue occurred at Columbia Correctional Institution (CCI). Defendant Dr. Sukowaty is the associate medical director at Dodge Correctional Institution (DCI), and she also works at CCI and other state prisons. Sukowaty became Carr's primary care provider at CCI in early August 2022.

Carr has had external hemorrhoids since 2002. In December 14, 2021, Dr. Murphy documented that Carr had external hemorrhoids and prescribed witch hazel topical 50% pads, to be used once daily. Witch hazel pads are used to reduce swelling caused by hemorrhoids and may provide some mild relief to the itching, burning, and skin irritation caused by that condition.

Carr submitted a health services request (HSR) dated November 6, 2022, and wrote that it was for Sukowaty. Dkt. 42-1 at 24. Carr wrote that prison medical staff had taken "so long" with his witch hazel pads that his hemorrhoids had worsened. *Id.* Carr asked that his order for witch hazel pads be doubled. *Id.* On November 7, 2022, nurse Alt responded that witch hazel pads had been issued on November 5, 2022, and Carr would have plenty if he used them as directed.

Carr submitted an HSR dated November 7, 2022, writing that it was for Sukowaty. Carr wrote that he was denied an ice bag and acetaminophen, and that he needed more than 24 tablets of acetaminophen. *Id.* at 25. A nurse scheduled Carr to be seen in the health services unit. *Id.*

On November 15, 2022, nurse Waddell told Sukowaty that Carr was requesting a monthly increase in witch hazel pads and acetaminophen. Sukowaty responded the same day, clarifying that the limit for acetaminophen tablets was 50. Sukowaty informed Waddell that increasing Carr's witch hazel pads wasn't indicated based on his symptoms and medical history and that he would need additional medication if his problems with hemorrhoids persisted. That day, Sukowaty entered an order for witch hazel pads, to be used once daily until November 5, 2023. Dkt. 42-1 at 45.

2

On February 7, 2023, nurse Kresser saw Carr. Kresser documented that Carr asked for his witch hazel pads to be increased to three to four daily because toilet paper irritated his hemorrhoids and he couldn't sit or stand for long periods without aggravating that condition. *Id.* at 11. Carr agreed to try a stool softener, and Kresser would see if the witch hazel pads could be increased. (Carr says that he asked if Sukowaty would only double the number of pads, Dkt. 58 ¶ 31, but his citation doesn't support this statement, Dkt. 47 ¶ 5.)

That day, Kresser told Sukowaty about Carr's request. Dkt. 42-1 at 20. Kresser reported that Carr had complained about bad hemorrhoids that were irritated two to three times daily after bowel movements and using toilet paper, and she stated that he was constipated and might benefit from the use of stool softeners. *Id.* Ten days later, Sukowaty responded "ok," but it's undisputed that she denied the request for additional witch hazel pads. *See id.*; Dkt. 58 ¶ 33.

On March 9, 2023, Kresser asked Sukowaty to confirm if Carr could have additional witch hazel pads. *See* Dkt. 42-1 at 20. That day, Kresser told Carr that his request for more witch hazel pads had been denied. Kresser advised Carr to continue using the stool softeners that she gave him, and she scheduled a follow-up visit with nursing staff.

On March 17, 2023, Sukowaty saw Carr for complaints of hemorrhoid pain. Sukowaty noted a small external hemorrhoid. Her plan was to switch Carr to docusate-senna, a stool softener, and order phenylephrine suppositories. Sukowaty determined that baby wipes were acceptable for Carr. Sukowaty didn't increase the order for witch hazel pads, but Carr says that she gave him an extra tub of them. Sukowaty advised Carr about keeping his stools regular and soft. Sukowaty says that it wasn't medically appropriate to increase the number of witch hazel pads because they would worsen his issues with hemorrhoids.

3

On March 29, 2023, nurse Dorau asked Sukowaty if Carr could have an order for baby wipes and daily shower use. Sukowaty responded that day that Carr could have baby wipes but not a medical shower restriction.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Carr must show that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). It's undisputed that Carr's problems with hemorrhoids were a serious medical need. The issue is whether Sukowaty consciously disregarded this need.

Conscious disregard requires that defendants are subjectively aware of that need. *See id.* 851 F.3d at 721. That means that defendants know of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *See id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Sukowaty and Carr, or between two medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*,

4

771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the prisoner's serious medical need only if her care is so inadequate that it demonstrates an absence of medical judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

Carr alleges that Sukowaty ignored two complaints in early November 2022 that his hemorrhoids were causing him serious pain and other symptoms and didn't provide more witch hazel wipes, a suppository, and adult wipes until March 2023. *See* Dkt. 1 ¶¶ 26, 28; Dkt. 13 at 5. The complaints that Carr refers to were HSRs, Dkt. 42-1 at 24–25, and there's no evidence that Sukowaty knew about either. It's undisputed that Sukowaty isn't responsible for scheduling appointments and that submitting an HSR doesn't mean that Sukowaty will be informed of it, even if Carr writes that the HSR is for her specifically. *See* Dkt. 58 ¶¶ 20, 24, 41, 44. Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard, *see Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc), but there's no evidence that Sukowaty ignored any of Carr's requests.

It's undisputed that Sukowaty was told in mid-November 2022 that Carr wanted more acetaminophen and witch hazel pads. But Sukowaty didn't ignore that request. Rather, she clarified that he could have more acetaminophen and entered an order for daily witch hazel pads for approximately a year. Sukowaty didn't increase the number of witch hazel pads that Carr could have, but she told the nurse that an increase wasn't indicated based on Carr's symptoms and medical history.

Carr says that he didn't get witch hazel wipes from "November 15, 2022 til November 5, 202[3]." *See* Dkt. 58 ¶ 28. It's unclear whether Carr is saying that he was using up the regular amount of witch hazel pads that he was receiving before a new order was filled or that he didn't receive any pads. Carr cites HSRs submitted after Sukowaty decided not to increase his witch hazel pads in mid-November 2022 to support this statement. *See* Dkt. 46-3 at 5–6, 10, 14, 17. Even if Carr didn't receive any pads in that period (which seems unlikely considering that he had an order for them), there's no evidence that Sukowaty knew about that result. Again, it's undisputed that Sukowaty isn't responsible for scheduling and there's no evidence that she was told about any of those requests.

Sukowaty denied Carr's request for additional witch hazel pads in February and early March 2023. Sukowaty says that she made this decision because using too many wipes would irritate Carr's hemorrhoids. Dkt. 42 ¶ 38. Carr doesn't directly dispute that Sukowaty denied the request for that reason. Carr contends that Sukowaty's declaration is inadmissible because she lacks personal knowledge of how witch hazel pads could irritate his hemorrhoids. Dkt. 58 ¶ 33. But Dr. Sukowaty is the associate medical director at DCI and Carr's primary care provider. Sukowaty is competent to explain the medical reasons for her treatment decisions. Even Sukowaty mistakenly determined that additional pads would have worsened Carr's hemorrhoids, a mere medical mistake doesn't prove conscious disregard. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 616 (7th Cir. 2022) ("Mistakes in medical judgment, even negligence, are insufficient to support deliberate indifference."). The issue is whether Sukowaty based her treatment decisions on her medical judgment, and the unrefuted evidence shows that to be the case.

Carr acknowledges that Sukowaty prescribed additional treatments in mid-March 2023 (i.e., docusate-senna, phenylephrine suppositories, and baby wipes), but he faults her for not prescribing them earlier. Carr says that he complained to Sukowaty about pain and bleeding caused by his hemorrhoids between November 2022 and the mid-March 2023 appointment. Carr cites a prisoner complaint to support this statement. Dkt. 46 ¶ 15 (citing Dkt. 52-16). This complaint wasn't filed until late February 2023, and the complaint report doesn't mention pain or bleeding. In any case, there's no evidence that Sukowaty knew about this complaint. Carr also cites the HSRs dated November 6 and 7, 2023 to prove that Sukowaty knew about his pain and bleeding. Dkt. 46 ¶¶ 11–12. But, again, there's no evidence that Sukowaty knew about those requests. There's no evidence that Dr. Sukowaty consciously delayed treating Carr's hemorrhoids, and her provision of additional treatments at the mid-March appointment shows that her care was at least minimally competent. *Cf. Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (courts must consider the "totality" of a prisoner's care when deciding whether a medical professional has consciously disregarded his serious medical need). Carr didn't receive all the care he wanted; Sukowaty didn't order an increase in witch hazel pads. But the Eighth Amendment doesn't entitle Carr to the treatment of his choice.

To sum up, no reasonable juror could conclude that Sukowaty consciously disregarded Carr's problems with hemorrhoids. I will grant summary judgment to Sukowaty and I will deny summary judgment to Carr.

ORDER

IT IS ORDERED that:

1. Defendant Dr. Sukowaty's motion for summary judgment, Dkt. 39, is GRANTED.

2. Plaintiff Robert Carr, Jr.'s motion for summary judgment, Dkt. 43, is DENIED.

3. The clerk of court is directed to enter judgment and close the case.

Entered December 20, 2024.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge